F6H5hamS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DIALLO HAMADOU, *et al*,

       Plaintiffs,

    v.                         12 Civ. 250 (JLC)

HESS CORPORATION, *et al*.,

       Defendants.

------------------------------x

                           New York, N.Y.
                           June 17, 2015
                           10:10 a.m.

Before:

           HON. JAMES L. COTT,

                      Magistrate   Judge

            APPEARANCES

OUTTEN & GOLDEN, LLP
    Attorneys for Plaintiffs
BY:  JUNO TURNER

PROSKAUER ROSE, LLP
    Attorneys for Defendants
BY:  LAWRENCE SANDAK
    NICOLE EICHBERGER

1               (Case called)

2               THE DEPUTY CLERK:  Counsel, state your name for the
3     record.  Good morning, your Honor.  Juno Turner, Outten &
4     Golden, LLP, for the plaintiffs.

5               THE COURT:  Good morning, Ms. Turner.

6               MS. TURNER:  Good morning.

7               MR. SANDAK:  Lawrence Sandak and Nichole Eichberger,
8     Proskauer Rose, for the defendants.

9               THE COURT:  Good morning to both of you.  Mr. Sandak,
10    nice to see you again.  You are always bringing me settlements.

11              MR. SANDAK:  Absolutely.  That's my role.

12              THE COURT:  All right.  Good.  I would like to have
13    other cases assigned you to.

14              You may be seated.  We are here for a fairness hearing
15    and to consider a number of motions that have been made by the
16    plaintiff.  Let me confirm first, Mr. Sandak, that am I right,
17    that there is in fact no opposition to any of the motions.

18              MR. SANDAK:  That's correct, your Honor.

19              THE COURT:  And also let me confirm I guess with you,
20    Ms. Turner, that it is a fact that no objections have been
21    filed to the proposed settlement?

22              MS. TURNER:  That's correct, your Honor; and no
23    plaintiffs have opted out either.

24              THE COURT:  And does any counsel have any awareness of
25    any objections of any kind, whether anything has been filed or

1  not filed?  Are you aware of any basis that anyone has
2  expressed concern about the settlement?
3          MS. TURNER:  No, your Honor.
4          MR. SANDAK:  Nothing whatsoever.
5          THE COURT:  Ms. Turner, I have a few questions that I
6  want to ask and, Mr. Sandak, if you have any view about these
7  questions I am happy to hear from you as well.
8          I am curious to understand a little better how the
9  allocation formula for the payment to the class members was
10 arrived at.
11         MS. TURNER:  Yes, your Honor.
12         Are you referring to the payments -- the allocation to
13 the FLSA plaintiffs versus the New York Labor Law class?
14         THE COURT:  Yes.
15         MS. TURNER:  It was a bit of a tough decision for us,
16 your Honor.  What it came down largely to was there was were a
17 number of people who protected their rights by filing consent
18 to join forms as part of the FLSA collective.  Those folks
19 tolled the statute of limitations on their FLSA claims and they
20 protected their 100 percent liquidated damages under the FLSA
21 which were a part of the class period, substantially more than
22 those that are available under the New York Labor Law.  The
23 remainder of the folks, those who are only New York Labor Law
24 class members, did not come forward, did not actively protect
25 their rights.  And so, we felt that that was something that was

worth recognizing in the allocation formula because those individuals have less of a chance of recovering anything, they were less likely to pursue these claims and opt-ins, on the other hand, are settling live claims.

It also reflects the fact that, in our view, it would have been more challenging, perhaps, to certify a Rule 23 class for these claims than it was to conditionally certify a FLSA collective or than it would have been to maintain that certification.  The higher Rule 23 standard especially under recent Supreme Court jurisprudence, we thought, presented particular challenges in this off-the-clock case.  The plaintiffs who were deposed testified to a couple of different ways that they experienced off-the-clock work and so we thought that that challenge also merited a higher allocation to the members of the FLSA collective.

THE COURT:  Mr. Sandak, do you have any views or thoughts about this particular subject from the defense perspective or co-counsel?

MS. EICHBIERGER:  No, your Honor.  Under the terms of the settlement we have left the allocation to the plaintiff's counsel, but as long as we could understand the formula and justification, we felt it was fine.

THE COURT:  And you have obviously no problem with it?

MS. EICHBIERGER:  No, your Honor.

THE COURT:  Let me ask another question, Ms. Turner.

1           I believe this is accurate to say that only a little
2    more than 14 percent of labor law class members returned the
3    claim forms to participate in the settlement.  Is that not
4    accurate?
5           MS. TURNER:  That's correct, your Honor.
6           THE COURT:  I think you all wrote it as more than 14
7    percent but I am saying only 14 percent.  What is the
8    explanation, if there is one, that you could advance to the
9    Court for such, what I will characterize, as a relatively
10   smaller term?
11          MS. TURNER:  I would agree, your Honor, that it is
12   certainly less than what we would hope for in other cases.  I
13   would note that the overall claims rate counting, or the
14   overall participation rate counting the individuals who were
15   also members of the FLSA collective and who are also part of
16   the New York Labor Law class, that's closer to 24 percent.
17   But, I understand the Court's concern.  I think it's a variety
18   of things and may be that some of these individuals did not
19   feel as though they had these claims.  They were generally, I
20   would say, compared to some of the other cases that our firm
21   has worked on, a hard population to reach.  We struggled to get
22   even our FLSA collective members to appear for depositions and
23   it was due to those concerns that we sought the Court's
24   approval to have a postcard reminder sent out and a brief
25   extension of the notice period to try and ensure that as many

1    people as possible received notice of a settlement and an
2    opportunity to participate.  We not see a huge bump in
3    participation after that went out, and so to me that suggests
4    perhaps a lack of interest among the class members, perhaps
5    distrust of the legal system, but that's also part of the
6    reason why we were willing to make that portion of the
7    settlement claims made with a reversion to the defendant.
8             THE COURT:  Again, if I remember this correctly and my
9    notes are accurate, there were 91 notices that were returned as
10   undeliverable and then 44 were remailed, so that means there
11   were at least 44 that were not delivered.  Is that accurate?
12            MS. TURNER:  That's correct, your Honor.
13            THE COURT:  Should I be concerned about that?
14            MS. TURNER:  I don't think that it is a particularly
15   large percentage, your Honor.  The claims administrator did use
16   all of the resources at their disposal to try and locate
17   updated addresses for these individuals.  Again, these folks
18   would have received initial notice of the class action or most
19   of them would have back when the FLSA notice went out and they
20   did not participate then.  To the extent their address changed
21   in the meantime and we weren't able to find an updated address,
22   I think that we have done all that we can to locate those
23   people and the fact that they haven't come forward of their own
24   accord in the meantime suggests that these aren't necessarily
25   claims that they would have pursued anyway.

1           THE COURT:  Why, in a case of this sort, were three
2  sets of lawyers necessary to litigate the case and you are the
3  only one here on behalf, if I gather, all three sets of lawyers
4  today?
5           MS. TURNER:  That's correct, your Honor.
6           THE COURT:  Should I be concerned that there was
7  duplication and unnecessary utilization of attorneys in a case
8  of this size?
9           MS. TURNER:  Respectfully, your Honor, I don't think
10  so.  That's part of the reason why I am the only person here
11  today.  We didn't think it was necessary to send
12  representatives from all three firms.  I think that Mr. Xue,
13  who originally brought the case at our firm, and Fitapelli &
14  Schaffer came in as they began to heat up in the discovery
15  realm, but we did not overstaff the file.  Typically only one
16  attorney was present for depositions and there was a fair bit
17  going on there for a while but we tried our best to kind of
18  triage it among the firms.
19           THE COURT:  You may speak to this a little bit in a
20  moment or two but when I was reviewing the Grinnell factors in
21  your memorandum you say that, and I am quoting now, "a motion
22  for class certification under Rule 23, particularly in the
23  context of time-shaving and off-the-clock claims, would require
24  intense exhaustive briefing and carry significant risk."
25           Why is that so?

1          MS. TURNER:  Well, your Honor, I think an
2     off-the-clock case presents particular challenges in a Rule 23
3     context.  There is a challenge in identifying, under Supreme
4     Court's decision in *Walmart v. Dukes*, a unifying policy by
5     which members of the class were required to work off-the-clock
6     and establishing that that policy or practice was in fact in
7     effect at all of the different locations.  So, that's one
8     issue.
9          Establishing the plaintiff's damages is another
10    concern in the Rule 23 context, under *Comcast*, again from the
11    Supreme Court.  In an off-the-clock case there obviously aren't
12    going to be records of the damages that individuals worked
13    because, by their very nature, the work is off-the-clock and
14    therefore unrecorded, and so proving those damages in a
15    class-wide manner can be challenging.
16         THE COURT:  Okay.  You also indicate to the Court
17    that, by your estimation, the $691,350 settlement represents a
18    gross award of approximately 54 percent of the class' lost
19    wages over the liability period which you calculated at
20    $1,280,755 assuming that class members work an average of 30
21    hours per week of 20 minutes off-the-clock work per shift.  I
22    think that's what you wrote if I remember correctly.  I am a
23    little confused by that because I don't understand why you
24    would be measuring that from the $691,000 number because
25    they're not getting $691,000, they're getting $440,000 or

1  something along those lines when you subtract the fees and the
2  costs out of the settlement fund.  So, it is really not 54
3  percent, it is really more like 34 percent; isn't it?
4          MS. TURNER:  That's correct if you are using the net
5  settlement fund.  I would say that our agreement with our
6  clients encompasses a contingency agreement and so our fees are
7  going to be deducted from any gross recovery.  That is part of
8  the reason that we find it appropriate to calculate that way.
9  I would say that even if we are going to calculate it based on
10 the net, I don't think that it is necessarily a bad result for
11 the class in light of the risks of the litigation that I
12 mentioned earlier.
13         THE COURT:  Let me ask this:  You also say that the
14 payments which average about $2,300 per opt-in and $616 per
15 class member, are substantial.  When you say they're
16 substantial, relative to what?  I don't know how to evaluate
17 that statement.  How do I evaluate that?
18         MS. TURNER:  Well, I think one thing to keep in mind
19 is that for these class members I think that that represents a
20 substantial payment, they're relatively low-wage workers.  That
21 is something that we believe would be something that would
22 truly provide assistance to them in their day-to-day lives.
23 Most of these folks worked part-time, they weren't taking home
24 a huge amount of money day to day and in our view, and compared
25 to other cases like this that we have litigated, we think

1   those, especially considering that they're average payments, it
2   may well be higher for some individuals representing good value
3   for the class.  And I would say the fact that we have received
4   no objection suggests that the class members likely also agree.
5               THE COURT:  It is always I think hard, especially in a
6   case where I was not involved in the settlement process, to
7   really evaluate that particular aspect of it but I do agree
8   with you that the fact that there have been no objections gives
9   me some comfort that, as you suggest, these average awards will
10  be meaningful to these opt-in plaintiffs and class members.  It
11  is correct, as you say, that typically these employees worked
12  on a part-time basis and when you say part-time I guess that's
13  what you refer to when you say 30 hours a week as opposed to
14  something other.
15              MS. TURNER:  I think they generally tended to work 25
16  hours a weeks, to 30.  Somewhere in that range.
17              THE COURT:  So, let me just review with you what I
18  understand is before me.
19              You have a motion for final certification of the
20  class, final approval of the settlement, approval of the FLSA
21  set, approval of the fees and costs and approval of the service
22  awards.
23              Those are all the applications that are before me,
24  correct?
25              MS. TURNER:  That's correct, your Honor.

F6H5hamS

1        THE COURT:  What, if anything, do you want to say as
2   far as we will take them one at a time, let's leave the fees
3   and the service awards to the side for the moment, let's leave
4   the approval of the class action and the FLSA settlement.
5   Let's address that first.  What, if anything, do you want to
6   say beyond what is in your papers, which I have obviously read?
7        MS. TURNER:  I appreciate that, your Honor.
8        THE COURT:  Maybe I shouldn't say I have obviously
9   read but I hope you would expect that I would have read and I
10  did in fact read and read carefully, given the nature of some
11  of the questions that I have asked, I hope that reflects that I
12  have reviewed them carefully.
13       MS. TURNER:  It does indeed, your Honor.
14       I don't know that I have that much more to say.  I
15  think, frankly, the Court has touched on many of the things
16  that I wanted to make mention of.  Obviously, in our view this
17  is a good settlement of this litigation, it reflects the risks
18  of moving forward, and in our view it provides the class with a
19  benefit now that is certain as opposed to a possible benefit
20  that could be years in the making.
21       I don't have anything further on that motion, your
22  Honor.
23       THE COURT:  Does the defense have anything they would
24  want to add on the application for the Court's approval of the
25  class and settlement?

(212) 805-0300

1    MS. EICHBIERGER: No, your Honor. I change my mind.
2    Sorry.
3         I just want to point out though there weren't any
4    exclusions either under the B3 class, not only were there no
5    objections and no opt-outs, I do think it is important for the
6    larger 25 -- 24-25 percent number of the entire class with FLSA
7    in the Rule 23 class to note we didn't have any exclusions.
8    You have a right to be excluded as well and there were zero
9    exclusions there.
10        THE COURT: Understood. Thank you for that
11   clarification.
12        Well, as I say, I have carefully reviewed the papers
13   and given the record that counsel has made and given that I
14   have independently evaluated the factors set forth in the
15   Grinnell case, I determine that they support approval of the
16   proposed settlement and I think I can, at this juncture, find
17   that the settlement is fair, reasonable, and adequate and not
18   the product of collusion. Given the provisional certification
19   that I made in February, the requirements of Rule 23A and B3 of
20   the Federal Rules of Civil Procedure have been satisfied in my
21   view and I find that the class can be certified and I do so
22   certify it for purposes of the settlement of this matter.
23        I further find that counsel for the plaintiffs have
24   extensive experience in litigating these cases and that there
25   are, in fact, serious questions of both law in fact, some but

1  not all of which we have just touched on in this colloquy this
2  morning and that the recovery, in the form of the settlement,
3  outweighs the possibility of potentially rate of recovery were
4  the case to be litigated going forward and with great expense,
5  presumably, over a long period of time.
6         I am satisfied that the settlement is an appropriate
7  one and that there is a strong judicial policy favoring
8  settlements of class action suits.  Accordingly, I in fact
9  approve the settlement and all the terms that are set forth in
10 the settlement agreement, and I also approve the FLSA
11 settlement.  So, I will certify the class and I will grant
12 final approval of the joint stipulation of settlement that's
13 attached to Mr. Schwartz' declaration and grant approval of the
14 FLSA settlement.  And, I should say, consistent with that
15 ruling, set of findings and any others I will make this
16 morning, I do plan to memorialize those rulings in a final
17 order and judgment that I know counsel have submitted to me and
18 I will use that as a template, if you will, but I plan to
19 modify it to some extent to make it conform to the way I
20 usually issued orders of these kinds under these circumstances.
21        I should add that, in general -- and I assume this
22 does not meet any objection -- I generally denominate these
23 final orders as final orders and judgments.  I think that there
24 is a clarity to doing it that way.  I understand, obviously,
25 from the defense, that there is no admission of liability here

1  and I will make that clear in the final order and judgment as
2  well.
3             So, I don't think you will find that when I do put
4  this on the docket it will be in any way inconsistent with what
5  we are addressing today.  I want to make the record we are
6  making clear, but I am also going to memorialize it in a
7  written order.
8             Why don't we turn now to service awards.  Do you want
9  to speak to that issue?
10            MS. TURNER:  Yes, your Honor.
11            We requested service awards totaling $13,000; $10,000
12 to each of the named plaintiffs and additional service awards
13 of $1,000 for each of the three opt-in plaintiffs who were
14 deposed.  We feel that these are appropriate given the amount
15 of time, labor, and risk that these individuals took in
16 pursuing these claims and in assisting counsel in their
17 prosecution.
18            THE COURT:  Does the defense have any objection to
19 these awards?
20            MS. EICHBIERGER:  No, your Honor.
21            THE COURT:  I find the awards to be reasonable,
22 they're common in these kinds of cases, they're important to
23 compensate plaintiffs for the time and effort that are expended
24 in assisting the prosecution of litigations of this kind and
25 the risks incurred by becoming and continuing as a litigant and

1   the other burdens that can be sustained by plaintiffs.  I also
2   find that the amounts provided in the settlement are certainly
3   within the heartland of what service awards have been approved
4   by other courts in similar circumstances.
5            In addition, I find that the awards are relatively
6   modest in relation to the overall settlement of the case and
7   for the reasons set forth by counsel in their motion papers.
8   Having reviewed all of those submissions, I find that the
9   service awards are in fact reasonable under the circumstances
10  and they're approved.
11           What about attorneys' fees?
12           MS. TURNER:  Yes, your Honor.
13           We have moved for an award of one third of the fund as
14  our fees and costs included in that number.  We feel that this
15  is fair, a fair compensation for our work and those for that of
16  our co-counsel on the file and is also consistent with the
17  practice in this circuit and I think it meets all of the
18  Goldberger factors.  I will note that there is no multiplier
19  being sought here.  Our actual fees are substantially in excess
20  of what is being sought on the file and so there is no concern
21  for a windfall to counsel under these circumstances.
22           THE COURT:  Does defense counsel have any objections
23  or other comments with respect to the applications for the
24  fees?
25           MS. EICHBIERGER:  No, your Honor.

F6H5hamS

1  THE COURT: And I gather, Ms. Turner, the amount of
2  the fees, the $230,450, that's inclusive of the $200,000-plus
3  amount for costs?
4  MS. TURNER: Yes, your Honor.
5  THE COURT: I did, in February, when I preliminarily
6  approved the settlement appointed Outten & Goldman, Fitapelli &
7  Schaeffer, LLP and Xue & Associates, PC, as class counsel
8  because, in my view, they met all the requirements of Rule 23G
9  of the Federal Rules of Civil Procedure. I find that class
10 counsel did substantial work identifying, investigating,
11 prosecuting and settling plaintiffs and the class members'
12 claims. Class counsel, for the most part, I am not sure it is
13 entirely sure to say this just about Xue & Associates, and that
14 is presumably why they looked at Outten and Fitapelli, but I
15 find, certainly, those two firms have substantial experience in
16 prosecuting and settling employment class actions including
17 wage and hour class actions and are well versed in wage and
18 hour law and class action law, and certainly the Xue firm is
19 versed in wage and hour law as well and the case wouldn't have
20 gotten off the ground without their work. So, I have no
21 hesitation in including them in the fee award here.
22 The work that all of the firms performed and litigated
23 in settling the case demonstrates their commitment to the class
24 and to representing the class' interest and they have, it
25 appears to me, committed substantial resources to prosecuting

F6H5hamS

1   the case.

2              So, for those reasons, I grant the application for the
3   fees inclusive of costs in the amount of $230,450 which
4   constitutes one third of the total settlement amount, and I
5   find that the amount is fair and reasonable and the percentage
6   of the recovery method, which is consistent with the trend in
7   the circuit and wage and hour suits.  Noting that -- and we did
8   have a little bit of exchange about this that Judge Pauley did
9   write that rather interesting decision on the subject of
10  attorneys' fees, but I find that the concerns he raised there
11  really aren't applicable in this particular case.  I certainly
12  respect the opinion that he wrote there and I can see how that
13  the views expressed there may be implicated in other cases, but
14  in this particular case I am comfortable with the application
15  that has been made here.

16             I will certainly add that public policy favors common
17  fund, attorneys' fees award, and it appears to me to be
18  appropriate here.

19             I also will note for the record that the factors
20  identified in plaintiff's motion papers from the *Goldberger*
21  case do weigh in favor of the attorney fee that has been
22  proposed, and I also will note that the lodestar cross-check
23  that plaintiffs submitted to the Court, in my view, further
24  supports the proposed award given, that by plaintiff's
25  calculations the hours worked by class counsel result in a

F6H5hamS

1   lodestar that is well more than twice the award that's been
2   given.  I guess I should say that number was represented to the
3   Court as being $566,421.56 which is well more than twice the
4   $230,000 attorneys' fees award here.
5           So, for all of those reasons it seems to me that the
6   attorneys' fees award is appropriate in these circumstance.
7           Are there other applications that you have to make
8   this morning, Ms. Turner?
9           MS. TURNER:  No, your Honor.
10          THE COURT:  Anything else from the defense that we
11  need to address this morning?
12          MS. EICHBIERGER:  No, your Honor.
13          THE COURT:  All right.  Well, I appreciate all the
14  hard work that counsel put into getting the case resolved and,
15  as I say, I will issue a final order and judgment consistent
16  with the rulings that I have set forth on the record today.  I
17  hope you get that on the docket the next day or so.
18          Anything else?
19          MS. TURNER:  No, your Honor.  Thank you.
20          MR. SANDAK:  Thank you very much.
21          THE COURT:  Thank you all very much.  Have a great
22  day.
23                              o0o
24
25